[Cite as *State v. Norman*, 2017-Ohio-92.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104244**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KABRON NORMAN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-580243-A

**BEFORE:** Celebrezze, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** January 12, 2017

**ATTORNEYS FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113

Gregory Scott Robey
Robey & Robey
14402 Granger Road
Cleveland, Ohio 44137


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Ronni Ducoff
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, Kabron Norman, appeals his convictions for rape, kidnapping, and gross sexual imposition. The charges stem from incidents involving two twin sisters under the age of ten. Appellant attacks these convictions and his consecutive life sentences in eight assignments of error. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} In 2013, D.C. lived at a house on Imperial Avenue in Cleveland, Ohio. She lived there with her three children — D.N., her oldest male child born November 24, 2004, and twin females, Ak.C. and An.C., born February 22, 2007. D.C.'s boyfriend "Joe" also lived there. Joe and appellant were good friends and appellant often visited Joe at the home. Appellant also often babysat the children when D.C. was at work.

{¶3} On April 13, 2013, D.C. arrived home from work. Appellant had been babysitting the children. She drove appellant to his place of employment and went back home. She then went to the bathroom. She overheard her children talking about something that gave her great concern. She called her son into the bathroom and asked him what was going on. D.N. expressed concern about something that had happened to the twins. D.C. then called the twins into the bathroom and asked them what happened. Upon hearing what the girls had to say, D.C. put the children in her car and drove to appellant's place of employment. Once there, she confronted appellant in the parking lot with the information her children had relayed. Appellant denied sexually abusing the

twins. D.C. left and dropped the children off at the children's grandmother's house. She then went home alone and cried.

{¶4} D.C. received a call from the children's grandmother and asked what was going on. After a brief conversation, the decision was then made to take the children to the hospital. D.C. picked up the twins and their grandmother and drove to a nearby hospital, where they spent the next 12 hours.

{¶5} The twins were separately examined and interviewed by a nurse at the hospital trained as a sexual assault nurse examiner ("SANE"). They were also seen by a physician. Police and social services were also called, and the girls were interviewed by social workers with Cuyahoga County Department of Children and Family Services ("CCDCFS"). They relayed the events that caused them to go to the hospital on April 13, 2013, and sexual assaults that had occurred previously.

{¶6} After an investigation by Cleveland police, appellant was arrested and charged with four counts of rape of a child under the age of ten (R.C. 2907.02(A)(1)(b)) with sexually violent predator specifications, four counts of kidnapping (R.C. 2905.01(A)(4)) with sexual motivation and sexually violent predator specifications, and four counts of gross sexual imposition (R.C. 2907.05(A)(4)) with sexually violent predator specifications.

{¶7} Prior to the trial, the court held a hearing to determine if D.N., An.C., and Ak.C. were competent to testify. The hearing consisted of the court asking the children questions in chambers while in the presence of appellant, his attorney, and the prosecutor.

After examining all three children, the trial court ruled they were competent to testify at trial. Also prior to trial, the state dismissed two counts of gross sexual imposition.

**{¶8}** The matter proceeded to a jury trial on November 30, 2014, with the exception of the sexually violent predator specifications, which were tried to the bench. At trial, D.N. testified that on April 13, 2013, he was sitting in the living room playing a video game with his sister An.C. An.C. wondered where Ak.C. was because she had been gone for a while. An.C. went to go check on her. D.N. testified that when An.C. did not return, he went to go see where she was. D.N. testified that he entered the bedroom the children shared and observed Ak.C. sitting on top of appellant who was lying on the twins' bed. She had only a shirt on. Appellant's clothes, what D.N. described as a snow suit, were pulled down to his ankles. D.N. testified that when appellant noticed him, appellant shouted at him to get out. D.N. left the room. He looked into the bedroom through a hole in the door and later observed An.C. get on to appellant's lap.

**{¶9}** When D.C. arrived home, she loaded the kids into the car and drove appellant to his place of employment. When they returned home, D.N. told his mother what he had seen.

**{¶10}** An.C. testified that two sexual assaults occurred at the Imperial Avenue home. She testified about a prior incident where the children and appellant were in the living room playing video games. While D.N. was on the couch closest to the television, appellant was seated on a couch further away. Appellant instructed An.C. and Ak.C. to

come to the back couch. An.C. testified that she and Ak.C. were separately instructed to pull down their bottom clothing, and sit on appellant's lap where he put his penis inside their anus. An.C. also testified about the sexual assault that occurred on April 13, 2013, previously described by D.N. where appellant put his penis inside her anus.

{¶11} Ak.C. also testified about two sexual assaults. She testified that one occurred in the bathroom of the Imperial Avenue home. She said that she had walked into the bathroom when appellant was inside. Appellant was sitting on the edge of the bathtub. Ak.C. asked if she could have a popsicle. Appellant responded by exposing his penis. He then instructed Ak.C. to suck on this "popsicle." Ak.C. also testified about the April 13, 2013 incident in the bedroom where appellant put his penis inside her anus.

{¶12} The state also elicited testimony from the SANE who examined the twins, their kindergarten teacher, the social worker at CCDCFS who interviewed the twins, and the detective who investigated the case. After the state rested, appellant called two expert witnesses. The first opined about the problems with child interviews and false reports, and questioned the lack of any recording of the interviews of the children, the questions that were posed, and the use of anatomically correct dolls and drawings. The second was a SANE who opined that no conclusions could be drawn from the forensic examination conducted by the SANE at the hospital. She also took issue with the methodology used by the SANE at the hospital.

{¶13} The jury returned guilty verdicts to all charges. The trial court set a hearing

date for the sexually violent predator specifications and sentencing. On February 19, 2016, the trial court found appellant not guilty of the sexually violent predator specifications. On the same day, the court conducted a sentencing hearing. After hearing from the state, appellant and his attorney, and D.C., the court imposed, most importantly, two consecutive life sentences without the possibility of parole.

{¶14} Appellant then filed the instant appeal, assigning eight errors for review:

I. The trial court erred when it found the alleged child victims and the child witness competent to testify, thereby depriving appellant of a fair trial.

II. The state failed to present sufficient evidence to sustain convictions against appellant.

III. Appellant's convictions are against the manifest weight of the evidence present, and must be reversed.

IV. Appellant was denied effective assistance of counsel, in violation of Article I, Section 10 of the Ohio Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution.

V. Appellant was denied a fair trial due to prosecutorial misconduct by the assistant prosecutors.

VI. Appellant was denied a fair trial by the cumulative errors by the trial court.

VII. The trial court erred when it permitted amendment of the indictment, thereby denying appellant a fair trial.

VIII. The trial court erred in the jury instructions by providing the dates of birth of the alleged victims, thereby denying appellant a fair trial.

## II. Law and Analysis

### A. Witness Competency

{¶15} Appellant first claims that the trial court erred in finding the three children

competent to testify.

{¶16} Evid.R. 601 begins with the general rule that every person is competent to testify. The rule then goes on to provide exceptions, including "children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A).

{¶17} First, D.N. was ten years old at the time of his testimony. Therefore, under the rule he was competent to testify at the time of trial. The competency hearing that was conducted prior to D.N. turning ten also provided no reason to disturb the court's finding that D.N. was competent to testify. D.N.'s trial testimony also does not disclose any concern that he was not competent to testify.

{¶18} In order to determine if a child under the age of ten is competent to testify, the court must conduct a hearing. In making this determination,

> the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.

*State v. Frazier*, 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991). *Accord In re M.G.*, 12th Dist. Butler No. CA2015-06-126, 2016-Ohio-2677, ¶ 17. The answers given must demonstrate that the child "can perceive and recall generally and understands the concept of truthfulness." *State v. Fry,* 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 76. This court generally reviews the trial court's determination of competency for an abuse of discretion. *Frazier* at 251.

{¶19} However, after the court made a competency determination, appellant failed to object.  Appellant also did not object prior to the children taking the stand to testify.  Had appellant made known the concerns he now advances to the trial court at that time, the court could have addressed appellant's concerns with further actions.  In failing to bring these issues to the trial court's attention at the appropriate time, appellant has waived all but plain error.  *State v. Baker,* 8th Dist. Cuyahoga No. 54439, 1988 Ohio App. LEXIS 2842, 8-9 (July 14, 1988); *State v. Groves,* 7th Dist. Monroe No. 853, 2002-Ohio-5245, ¶ 10; *State v. Galloway*, 6th Dist. Lucas No. L-90-056, 1991 Ohio App. LEXIS 5293, 5-6 (Nov. 8, 1991).  Plain error does not exist, unless, but for an obvious error the outcome of trial clearly would have been otherwise.  *State v. Underwood,* 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), at the syllabus.  Plain error must be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice.  *Id*. at 14.

{¶20} The trial court held a competency hearing on September 3, 2014.  The court interviewed the three children separately. The twins were able to answer the court's questions, understand the gravity of the situation, and the need to answer questions truthfully.  The court's voir dire of each child included questions addressing their ability to understand and answer questions, relay information and events truthfully, and the ability to distinguish fact from fiction.

{¶21} After a review of the voir dire, this court cannot say that plain error exists in finding the twins competent to testify.  The following exchange took place between

An.C. and the trial court, and is representative of the questions asked to all three children:

Q: How old are you?

A: Seven.

Q: And when is your birthday?

A: February 22nd.

Q: Do you go to school?

A: Yes.

Q: Which one?

A: Sunbeam.

Q: Okay. I met somebody named [Ak.C.] today that also has a birthday on that same day. Why is that?

A: Twins.

Q: I see. What grade are you in right now?

A: Second.

Q: And who is your teacher?

A: Ms. Evans.

Q: And who was your teacher last year?

A: Ms. Brown.

Q: What are some of the things you like to do in school?

A: Have recess and do art and reading class.

Q: You like the reading class. What don't you like in school?

A: Hurting people.

Q: That's fair. Where do you live?

A: I don't know.

Q: Do you know the name of your street?

A: No.

Q: Do you know who you live — do you live in a house?

A: No.

Q: Do you live in an apartment?

* * *

A: Yes.

Q: Who do you live in the apartment with?

A: Mommy, my daddy.

Q: Who else?

A: My sister and my brother.

Q: What are their names? You told me the name of your sister. What's your brother's name?

A: [D.N.].

Q: Do you know what numbers are?

A: Yes.

Q: How high can you count? Can you count?

A: Yes.

Q: How high can you count?

A: Only to 10, not 100.

Q: That's the highest number you know is 10? You know 100 but don't know how to get there?

A: I count by fives.

Q: You count by fives, too?

A: I can't get to 100.
* * *

Q: [An.C.], what did you do this summer?

A: Went to the Air Show.

Q: That was just recently. Did you like the Air Show?

A: Yes.

Q: Tell me about what you did last summer.

A: I played outside.

Q: What did you do outside?

A: Played tag.

Q: Played tag. Okay. What else did you like to play outside?

A: Freeze tag.

Q: Freeze tag?

A: Yes.

Q: And let me ask you, do you know the difference between what's right and what's wrong?

A: Yes.

Q: And do you know the difference between telling the truth and telling a

lie?

A: Yes.

Q: Is it right or wrong to tell a lie?

A: Wrong.

Q: Is a lie good or bad?

A: Bad.

Q: What happens when you tell a lie?

A: You go to jail.

Q: Okay. If I told you that I have a green hat on my head right now, is that the truth or a lie?

A: Lie.

Q: If you make a promise, do you keep it?

A: Keep what?

Q: If you make a promise to someone, do you keep it?

A: Yes.

Q: Is it good or bad to break a promise?

A: Bad.

Q: Do you promise to tell the truth when you talk to us either here or in court?

A: In here?

Q: Or in court.

A: In both of them?

Q: Yes. Have you told me the truth today?

A: Yes.

Q: When you talk to us in court, will you tell the truth to us?

A: Yes.

Q: Do you promise not to tell a lie either in court or in here?

A: In court and here?

Q: Yes. Have you told any lies today?

A: No.

Q: Will you promise not to lie when you talk to us in the courtroom?

A: Yes.

Q: Could you tell us why you're here today.

A: Because —

Q: Why did you come down to court today?

A: To talk about something.

Q: To talk about what?

A: [Appellant].

Q: What about [appellant]?

A: I don't know.

Q: Do you want to tell us about — you came down here to tell us something about [appellant]?

* * *

A: Yes.

THE COURT: That's good enough. Thank you. You can take her. Thank

you, [An.C.].   We appreciate it.

**{¶22}** In a case where similar questions and answers were provided, the Twelfth

District found the trial court did not abuse its discretion in finding an eight year old

competent to testify.   *M.G.*, 12th Dist. Butler No. CA2015-06-126, 2016-Ohio-2677.

There, the victim

was able to provide her name, the age of her brother, the identities of the

people she lived with, and the street and city where she resided. She was

also able to communicate her current grade at school, the name of her

school, the name of her teacher, her awareness of being in the courtroom,

and why she was in court. Her answers also showed she knew the difference

between truth and falsity, understood the importance of telling the truth, and

understood she should tell the truth.

*Id*. at ¶ 21.

**{¶23}** While the trial court's questioning of An.C. and Ak.C. could have been

more thorough, there is not a sufficient basis to find that the trial court's decision to find

the twins competent to testify amounted to plain error.

**{¶24}** Appellant also asserts within this assigned error that the trial court erred in

preventing appellant from independently questioning the children.   Appellant did not

seek to question the children below, so there is no way to conclude that the court

impermissibly prevented appellant from asking any questions.

**{¶25}** Appellant's first assignment of error is overruled.

## B. Sufficiency

**{¶26}** Appellant argues that the verdicts in his case are not supported by sufficient evidence.

**{¶27}** A challenge that a criminal conviction is unsupported by sufficient evidence requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). This court determines "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. An appellate court does not assess the credibility of the state's evidence, but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387; *Jenks* at paragraph two of the syllabus.

**{¶28}** Appellant was found guilty of four counts of rape, two relating to each victim. Pertinent to this case, R.C. 2907.02(A)(1)(b) prohibits one from engaging in sexual conduct with another when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

**{¶29}** Appellant was also found guilty of four counts of kidnapping, two related to

each victim.   Kidnapping is defined in R.C. 2905.01(A)(4), and prohibits one, "by force, threat, or deception, or, in the case of a victim under the age of thirteen * * * by any means," from removing another from the place where the other person is found or restraining a persons liberty "[t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"

{¶30} Finally, appellant was found guilty of two counts of gross sexual imposition.  The crime of gross sexual imposition is defined in R.C. 2907.05(A)(4), and as it relates to this case, prohibits one from having sexual contact with another when "[t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶31} The testimony of the twins and their brother, taken without negative inferences, provides sufficient evidence for each count alleged in the indictment.  D.N. testified he walked into the bedroom and saw appellant's penis in Ak.C.'s "koochie."   He stated appellant's clothing was pulled down around his ankles and that An.C. was naked from the waist down.   When appellant told D.N. to get out, D.N. did so, but looked back into the bedroom through a hole in the door.   D.N. testified that after awhile he saw An.C. get on appellant's lap.

{¶32} An.C. testified that appellant ordered her to take off her pants and underwear and get up on the bed on top of his lap.  She then testified that appellant put his penis in her anus and also that he put his hands on her butt.   An.C. also testified about a prior incident that occurred at the Imperial Avenue home when appellant ordered her

over to the couch and stripped off the clothes from her bottom half. He then ordered her to get on his lap where he put his penis in her anus.

{¶33} Ak.C. testified that appellant instructed her to engage in fellatio in the bathroom. She testified that another time, appellant ordered her to get onto his lap while he laid on the twins' bed in the children's bedroom. She also testified that appellant put his hands on her butt.

{¶34} D.N.'s testimony corroborated the testimony of the twins. Therefore, sufficient evidence exists in the record to support appellant's rape, kidnapping, and gross sexual imposition convictions.

{¶35} Appellant claims that the lack of physical evidence found in the sexual assault examination means that his convictions are unsupported by sufficient evidence. The jury heard the testimony from SANE Lisa Arnold as well as appellant's expert witness Dr. Suzanne Rotolo that children who experienced vaginal or anal rape may have no signs of trauma. Therefore, the lack of serious trauma to the genitals of the victims does not mean that appellant's convictions are unsupported.

{¶36} Appellant's second assignment of error is overruled.

### C. Manifest Weight

{¶37} Appellant also argues that his convictions are against the manifest weight of the evidence.

{¶38} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented, and questions whether

the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶39}** In conducting such a review, this court remains mindful that the credibility of the witnesses and the weight given to evidence are primarily for the trier of fact to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to take into account inconsistencies — along with the witnesses' manner, demeanor, gestures, and voice inflections — in determining whether the proffered testimony is credible. *State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42, citing *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'"

*Thompkins* at 387, quoting *Martin* at 175.

{¶40} Under this assignment of error, this court takes into account the credibility of the witnesses and is able to draw inferences adverse to the state. Even doing so, this court is unable to find that the verdicts are against the manifest weight of the evidence.

{¶41} The guilty verdicts in this case hinge on the testimony of D.N., An.C., and Ak.C. A review of their testimony compared to the version of events documented in the medical records by SANE Arnold provides the strongest arguments for appellant within this assigned error. According to the medical records, An.C. and Ak.C. both told the SANE that appellant put his penis in their vaginas. However, when testifying at trial, both girls indicated appellant put his penis in their anus. Appellant highlights other details, such as the clothing that the girls were wearing at the time of the attack as evidence that the children's testimony should not be believed.

{¶42} After a careful review of their testimony and the medical records, this court cannot say that the jury clearly lost its way in finding appellant guilty of rape, kidnapping, and gross sexual imposition. D.N. testified he witnessed the sexual abuse. An.C. and Ak.C.'s testimony did change over time, but not to such a degree that this court has serious reservations about appellant's guilt.

{¶43} Therefore, this assigned error is overruled.

### D. Ineffective Assistance of Counsel

{¶44} Appellant claims his trial counsel provided constitutionally deficient performance for numerous reasons.

{¶45} Reversal of a conviction for ineffective assistance of counsel requires a defendant to show that counsel's performance was deficient, and the deficient performance prejudiced the defense. *State v. Smith*, 89 Ohio St.3d 323, 327, 731 N.E.2d 645 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel's performance must fall below an objective standard of reasonableness to be deficient. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).

{¶46} First, appellant argues that counsel was ineffective for failing to strike specific jurors. He takes issue with counsel's failure to strike a juror who appellant claims thought that appellant should have to prove his innocence. He further singles out those potential jurors that have been or knew someone who was a victim of sexual assault.

{¶47} The following exchange was had between appellant's attorney and a potential juror during voir dire regarding the burden of proof.

> Appellant's attorney: And I think you said on the questionnaire as well that the defendant should be required to prove his innocence. Tell me what you mean by that.
>
> Juror: It's just more telling his side of the story. I mean, if you're accused of something, you should have — you have a duty to say something, anything.
>
> Appellant's attorney: So if someone didn't say something in their own defense, would you hold that against them?

Juror: Not necessarily, but I think they should be given the option.

Appellant's attorney: Okay.   So if you have to — you're told by the Judge that you have to assume they're innocent and that they —   you can't assume anything if they don't testify. Can you follow that?

Juror: Sure.

**{¶48}** After appellant's attorney questioned the potential jurors on the topic of appellant's right to remain silent and several responded that the appellant should testify, the court specifically inquired of all the potential jurors if they could follow his instructions about appellant's right to remain silent.   After hearing the court's instruction, a different potential juror indicated he still held the belief that appellant should testify. The juror appellant now claims should have been excused indicated he could follow the judge's instruction on this point.   The court excused the jurors that indicated they believed appellant should testify and demonstrate his innocence.

**{¶49}** Similarly, each juror that indicated they were or knew someone who was a victim of sexual assault indicated that they could be fair and impartial in weighing the evidence.   For these reasons, counsel was not ineffective for retaining the jurors appellant now points to as constituting error.

**{¶50}** Appellant claims counsel was also ineffective for failing to challenge the credentials of Arnold, the SANE who examined the twins at the hospital.   When describing her training and experience, Arnold testified that she completed the necessary training to become a SANE and had been working in that capacity for two years when she examined the twins.   She stated that it was recommended that after completing her

training, she work in the field for two to five years before sitting for the examination for certification. At the time of trial, Arnold had not taken the certification exam.

{¶51} Arnold explained why. She testified that she had been working as a SANE for two years. Soon after her examination of the twins, her son developed a medical condition that caused her to transition to part-time employment. There is no evidence in the record or otherwise offered by appellant that Arnold was not qualified to conduct a sexual assault examination.

{¶52} Arnold had completed the necessary course work and had experience in conducting approximately 70 sexual assault examinations. Appellant's own expert witness confirmed that once training was completed, a nurse could conduct examinations. The expert witness also confirmed that it used to be advised that nurses get two years of clinical experience before taking the certification examination. The recommendation has since been changed to "some clinical experience."

{¶53} Appellant also challenges Arnold's testimony about her expected findings in a physical exam and a lack of objection or challenge. Appellant's attorney did attempt to challenge Arnold on her conclusion that what she found was consistent with the disclosures made by the victims. Appellant has not demonstrated any deficiency in counsel's performance during the testimony of Arnold, or that some challenge to her qualifications would have created a different result at trial.

{¶54} This assigned error is overruled.

### E. Prosecutorial Misconduct

**{¶55}** Appellant claims the prosecutor committed misconduct so prejudicial that he was denied his right to a fair trial.

**{¶56}** "The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial." *State v. Fears*, 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999).

**{¶57}** Appellant also claims he was denied a fair trial by the state repeatedly asking questions that sought to elicit impermissible evidence. During the trial, the state did ask certain questions that appeared to seek inadmissible evidence. For example, during the questioning of the victims' teacher, appellant asserts that the state asked the teacher to recount specifically what the girls said. Later, during the testimony of the DNA expert, Laura Evans, the state asked questions of the DNA expert to elicit conclusions that could not be drawn about whether her findings were consistent with sexual assault or not. In these instances, and others throughout trial, appellant's counsel objected and the objections were sustained. Appellant does not offer any evidence about prejudice or how these questions to which no answers were given denied him of a fair trial.

**{¶58}** The Ohio Supreme Court found that no prosecutorial misconduct existed where improper questions were properly objected to and objections were sustained, and the prosecutor did not "embark on or embrace a pattern of repeated or egregious abuse of examination or cross-examination." *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). No such pattern exists here.

**{¶59}** Appellant complains the state also impermissibly attacked his expert witnesses on cross-examination. A reading of the transcript reveals pointed and repeated questioning of the defense expert witnesses that could be classified as aggressive and combative. However, nothing indicates the prosecutor's questions strayed from objectionable to misconduct. Again, improper questions were objected to by appellant's counsel and those objections were sustained.

**{¶60}** For instance, during the questioning of appellant's first expert, the state was admonished once by the trial court for editorializing rather than asking a question. The remainder of the questioning substantially abided by the court's direction, and the court did not have to further admonish the prosecutor.

**{¶61}** Another example complained of by appellant was whether the second expert would doubt the disclosure of the victims because there was no medical evidence. The expert had already answered the question, that she would not, and that sexual assault may occur even though no signs of trauma exist. Appellant's attorney objected because the question was previously asked and answered. The objection was sustained. While repeating questions that have been previously answered is objectionable, it does not indicate misconduct that would deny appellant of a fair trial.

**{¶62}** Appellant also complains that the prosecutor, during closing arguments, impermissibly intruded on his right to remain silent by talking about what would have happened if the victims' clothing was tested and his DNA was found.

**{¶63}** "The test regarding prosecutorial misconduct in closing arguments is

whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).

**{¶64}** During appellant's closing arguments, his attorney commented on the lack of any DNA evidence and the fact that the twins' outer clothing was not tested for DNA. The statement appellant asserts was improper was made in response to a statement made during appellant's closing argument that questioned why the outer clothing of the children was not tested for DNA.

**{¶65}** During trial, the DNA expert explained that she did not test this clothing because the results would not have been probative. From the brief history of the case she had, she understood that the alleged perpetrator was around the girls a significant amount of time. If his DNA was found on their outer clothing, it would not contribute to an understanding of whether appellant committed the acts for which he was charged. The state, during its second closing argument, highlighted that fact and that testimony. The state did not impermissibly comment on appellant's right to remain silent as alleged in this appeal.

**{¶66}** Appellant also claims the prosecutor committed misconduct during closing arguments by suggesting the defense expert witnesses were there for remuneration. Appellant alleges that this is an improper attack, but points to no case law to support that proposition. The prosecutor asked each defense expert witness about their hourly rate and the compensation they expected from this case. The state was commenting on

testimony that existed in the record.

{¶67} The state did not commit misconduct such that appellant was deprived of a fair trial. A reading of the transcript reveals only minor issues that were objected to by appellant's counsel and corrected by the trial court. Therefore, appellant's fifth assignment of error is overruled.

## F. Cumulative Error

{¶68} Appellant claims that there were substantial, cumulative errors that denied him a fair trial. He alleges that several evidentiary rulings made by the trial court constitute errors that, when taken together, substantially prejudiced him.

{¶69} A trial court has broad discretion in the admission of evidence. Unless this court determines that the trial court abused that discretion and prejudice enures to the appellant as a result, a reviewing court will not disturb that ruling. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). If trial counsel fails to object to the admission of certain evidence or testimony, the objection is waived unless there is plain error in the admission. *State v. Mallette*, 8th Dist. Cuyahoga No. 87984, 2007-Ohio-715, ¶ 12. Appellant did not object to Arnold's testimony or much of the alleged cumulative errors he now points out, so a plain error analysis would apply.

> Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection

at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

(Citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶70} "Under the doctrine of cumulative error, 'a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.'" *State v. McKelton*, Slip Opinion No. 2016-Ohio-5735, ¶ 321, quoting *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223. Errors are bound to occur at trial, but only those errors that are prejudicial may result in reversal. Indeed, "'[t]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" *State v. Hill*, 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). Further, "'the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent.'" *State v. Heineman*, 8th Dist. Cuyahoga No. 103184, 2016-Ohio-3058, ¶ 85, quoting *State v. Allen*, 8th Dist. Cuyahoga No. 102385, 2016-Ohio-102, ¶ 53.

{¶71} Appellant points to various things he claims were errors that maybe would

not rise to the level of plain error alone, but when taken together resulted in significant prejudice to appellant and resulted in the denial of due process and a fair trial.

**{¶72}** Appellant claims that the trial court allowed Arnold, the SANE who conducted the in-hospital examinations, to give expert witness testimony even though she was not declared an expert witness at trial and did not file an expert report. Appellant only points to Evid.R. 702 for support.

**{¶73}** Evid.R. 702 allows for expert witness testimony about relevant subject matter that may assist the jury. *Heineman*, 8th Dist. Cuyahoga No. 103184, 2016-Ohio-3058.

> [O]pinion testimony by lay witnesses "is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Furthermore, while Evid.R. 803(4) renders statements made by a patient to a medical provider "for purposes of medical diagnosis or treatment" admissible, the rule cannot be used to admit a treating physician's opinion testimony.

*Id.* at ¶ 15. Where the medical professional testifies as to what the patient said in relation to medical treatment and the professional's perceptions and treatment, this is the admissible testimony of a fact witness. *Heineman* at ¶ 20.

**{¶74}** In *Heineman*, this court found that a treating psychologist offered a mix of fact and expert testimony. However, we also noted that a lay witness may offer opinion

testimony based on experience or training. *Id*. at ¶ 25, citing *State v. McKee*, 91 Ohio St.3d 292, 296-297, 744 N.E.2d 737 (2001).

{¶75} This court also considered whether *Heineman* was prejudiced by the failure of the state to provide an expert report in accordance with Crim.R. 16(K). *Heineman* at ¶ 22. This court found that the trial court has discretion to determine whether in the absence of an expert report, the medical records of a victim may satisfy the requirement. *Heineman* at ¶ 23-24, citing Loc.R. 21.1(C). We determined that the trial court did not abuse its discretion in allowing the treating psychologist to testify in toto. In the alternative, the *Heineman* court found that any error was harmless where the medical records were provided and the medical professional's testimony was consistent therewith. *Id*. at ¶ 26-27.

{¶76} Here, the twins' medical records were provided in discovery, and Arnold's testimony was consistent with those records. Further, Arnold never offered an opinion as to the veracity of the twins' statements. Appellant has not demonstrated that error exists on this point.

{¶77} Appellant also complains that his expert, Kamala London, was impermissibly denied the opportunity to testify about all of the twins' past statements and highlight the variations, and give her opinion as to whether their reporting was truthful.

{¶78} Evid.R. 703 provides that the "facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Evid.R. 705 also provides, "[t]he expert may

testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise." Therefore, "the facts underlying an expert's opinion must be either part of the expert's personal knowledge or admitted into evidence at the hearing or trial." *Jarvis v. Hasan*, 10th Dist. Franklin No. 14AP-578, 2015-Ohio-1779, ¶ 30, citing *Frazier v. Ohio State Univ. Hosp.*, 10th Dist. Franklin No. 95API06-774, 1995 Ohio App. LEXIS 5628 (Dec. 19, 1995).

{¶79} At trial, the state objected prior to this witness taking the stand. It argued that London's report and purported testimony was based on facts that were not in evidence. The state could not use, and appellant did not attempt to impeach the child witnesses with any prior inconsistent statements. Therefore, the prior statements on which the expert's opinion was based were not in evidence. The trial court agreed with the state and limited the expert's testimony to statements and evidence that were in the record. The trial court allowed London to testify as to hypothetical situations, which is allowed. *See Surman v. Ohio & Pennsylvania Oil & Gasoline Co.*, 116 Ohio App. 453, 183 N.E.2d 386 (8th Dist.1962). The record does not support that the trial court abused its discretion in so ruling.

{¶80} Appellant also claims that the court impermissibly limited the testimony of his other expert, Dr. Rotolo. The exchange appellant claims impermissibly limited Dr. Rotolo's testimony did not do so.

{¶81} When appellant's attorney asked Dr. Rotolo about finding DNA and time

frames, the state objected to her answer and the court sustained. After appellant's attorney laid a proper foundation for the question and answer, the court allowed appellant's attorney to inquire about the subject and for Dr. Rotolo to provide an answer. (Tr. 944.) Appellant does not point to any case law or elucidate why the court's ruling sustaining the object and later allowing the testimony after a proper foundation was laid for Dr. Rotolo to testify about DNA recovery was in error.

{¶82} Appellant also claims the court erred in allowing An.C. to write out her answers to certain questions, which were then read out loud by the prosecutor. During questions, An.C. did not want to say out loud certain things that appellant did to her. When An.C. indicated she did not want to say the things out loud, with the court's permission, the state produced a blank piece of paper and handed it to An.C. She then wrote down her answers and went over them with the prosecutor. She acknowledged the things written down were her answers to questions.

{¶83} Appellant also claims that the state's use of anatomically correct dolls during An.C.'s questioning was error. After An.C. indicated that appellant put his private part in her butt, the prosecutor produced a doll and asked An.C. to identify where on the doll she meant by private part. She identified the penis on the doll. Appellant claims the use of dolls has been shown to be problematic and their use may produce unreliable testimony.

{¶84} The only authority cited for the proposition that these events constitute error is Evid.R. 403(A). This rule provides, "[a]lthough relevant, evidence is not admissible if

its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury."

{¶85} Again, admission or exclusion of evidence is left to the sound discretion of the trial court and absent an abuse of that discretion, this court will not disturb a trial court's evidentiary ruling. *Hymore*, 9 Ohio St.2d at 128, 224 N.E.2d 126.

{¶86} Allowing An.C. to write out answers she did not want to speak out loud was not confusing to the jury, did not mislead the jury, and was not unfairly prejudicial. Appellant claims allowing this unfairly portrayed An.C. as helpless. Appellant, however, fails to support this position with any further argument or case law.

{¶87} The use of anatomically correct dolls has a complicated history. Appellant's own expert witness eventually admitted that anatomically correct dolls could be employed as a confirmatory tool during forensic interviews. During London's testimony, she indicated the improper use of such dolls during early stages of disclosure or an interview can lead to false reports. However, she agreed that dolls could be used as a confirmatory tool to clarify what was already disclosed.

{¶88} During An.C.'s testimony, when the state attempted to use anatomically correct dolls in a capacity other than to confirm a statement already made, the court did not allow it. The use of dolls as a confirmatory tool during An.C.'s testimony was not confusing for the jury, did not mislead the jury, and was not unfairly prejudicial.

{¶89} In this trial, cumulative error did not occur in such a way as to deny appellant a fair trial. This assignment of error is overruled.

## G. Amendment of the Indictment

**{¶90}** Appellant also alleges that the trial court erred in allowing the state to amend the indictment to conform to the evidence prior to appellant's Crim.R. 29 motion.

**{¶91}** The amended bill of particulars specified that the alleged crimes occurred at the address of the hospital where the twins were examined. The court allowed the state to amend the address to the Imperial Avenue home where the children testified the events took place. The indictment also alleged that An.C. and Ak.C. were vaginally raped. However, their testimony at trial stated that they were anally raped. The trial court permitted the state to amend the indictment to change the manner of rape accordingly.

**{¶92}** Under Crim.R. 7(D),

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is

made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.

"Whether an amendment changes the name or identity of the offense charged is a matter of law that we review de novo." *State v. Pheanis*, 2d Dist. Montgomery No. 26560, 2015-Ohio-5015, ¶ 23, citing *State v. Frazier*, 2d Dist. Clark No. 2008 CA 118, 2010-Ohio-1507, ¶ 22. "'If the amendment does not change the name or identity of the crime charged, then we apply an abuse of discretion standard * * *.'" *Id.*, quoting *Frazier* at ¶ 23.

{¶93} Appellant complains that the location of the charged crimes in the bill of particulars was different than that adduced at trial. He asserts that when the court allowed amendment to the location at the close of the state's case, that change prejudiced him.

{¶94} The location listed in the amended bill of particulars, filed November 18, 2015, incorrectly indicated the location of offense was the hospital where the twins were examined. However, the bill of particulars filed on January 30, 2014, correctly listed the location as the Imperial Avenue home. Also, in other materials provided during discovery, the Imperial Avenue address was also listed. Appellant was not surprised by the testimony and was not prejudiced by the amendment of the location to conform to the evidence. Counsel for appellant understood or should have understood where the alleged crimes were purported to have occurred. The trial court did not abuse its discretion in

allowing amendment of the second bill of particulars to accurately reflect the location of the offenses.

**{¶95}** Appellant also claims the amendment of the means of commission of rape from vaginal to anal penetration was improper and prejudiced him. The state informed appellant's counsel of the change prior to trial, and therefore, appellant was not surprised by the testimony. Further, the change from vaginal penetration to anal penetration did not change the nature or identity of the charged offense. The rape statute does not differentiate between anal and vaginal rape and the same subsection of the statute applies. The amendment did not change the degree of offense, the penalty, or significantly alter appellant's defense. Therefore, the trial court did not err in granting the state's motion to amend the indictment to reflect the evidence adduced at trial.

**{¶96}** This assigned error is overruled.

### H. Jury Instructions

**{¶97}** Appellant claims in his eighth assignment of error that the jury instructions issued by the trial court were given in error. Specifically, appellant claims that the court erred in including the date of birth of the victims in the jury instructions.

**{¶98}** "Jury instructions are reviewed in their entirety to determine if they contain prejudicial error." *State v. Wiley*, 8th Dist. Cuyahoga No. 99576, 2014-Ohio-27, ¶ 35, citing *State v. Kimmie*, 8th Dist. Cuyahoga No. 99236, 2013-Ohio-4034, ¶ 69, citing *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984).

**{¶99}** Appellant is correct in stating that age is an element of the offense that must

be proved by the state. *Accord State v. Price*, 80 Ohio App.3d 35, 43, 608 N.E.2d 818 (3d Dist.1992). The court's jury instructions included the date of birth of both victims. However, the instructions also indicated that the jury must find the victims were under the age of 13 at the time of the offense.

{¶100} Here, no prejudice resulted from the inclusion of the date of birth in the jury instructions because D.C., An.C., and Ak.C. all testified about the date of birth of the twins.

{¶101} This court has previously found no plain error where the trial court's instructions included the date of birth of the victim even though an element of the offense required the state to show that the victim was under the age of 13 at the time of the offense. *State v. Williams*, 8th Dist. Cuyahoga No. 94616, 2011-Ohio-925, ¶ 41. Likewise, this court does not find plain error when the jury instructions included the date of birth of the victim where proof was required that the victim was under the age of 13 at the time of the offense.

{¶102} Any error from the inclusion of the victims' date of birth in the jury instructions was harmless. Therefore, appellant's eighth assignment of error is overruled.

### III. Conclusion

{¶103} Appellant's convictions for rape, kidnapping, and gross sexual imposition are supported by sufficient evidence and are not against the manifest weight of the evidence. Further, the court did not commit prejudicial error in finding the three minor

witnesses competent to testify, in making certain evidentiary ruling that appellant claims caused cumulative error, in giving jury instructions that included the age of the victims, and allowing the state to amend the indictment and bill of particulars to conform to the evidence adduced at trial. Appellant's counsel was not constitutionally ineffective and the prosecutor did not commit prosecutorial misconduct.

{¶104} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR