[Cite as *State v. Santiago*, 2011-Ohio-3058.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95516

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ARCADIO F. SANTIAGO, JR.

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-529881

**BEFORE:** Kilbane, A.J., Celebrezze, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 23, 2011

ATTORNEY FOR APPELLANT

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio 44116

ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor
Carrie Heindrichs
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, A.J.:

{¶ 1}   Defendant-appellant, Arcadio Flores Santiago, Jr. (Santiago), appeals from his convictions for attempted murder and felonious assault.   For the reasons set forth below, we affirm.

{¶ 2}   On October 16, 2009, Santiago was indicted for attempted murder in violation of R.C. 2903.02(A), one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of felonious assault in violation of R.C. 2903.11(A)(2), in connection with the August 29, 2009 stabbing of DeShawn Willis (Willis).   He pled not guilty and the matter proceeded to a jury trial on June 9, 2010.

{¶ 3} For its case, the State presented the testimony of Willis, his wife, Tracy Patterson (Patterson), and Cleveland Metropolitan Housing Authority (CMHA) police officers Marc Ortiz (Sergeant Ortiz), Ryan Allen (Officer Allen), and Stephen Kolb (Officer Kolb).

{¶ 4} Willis testified that he, Patterson, and her children, ages 10, 9, and 6, live in a CMHA unit, located at 2840 Central Avenue, in Cleveland. The morning of August 28, 2009, Willis visited his mother, who lives on Division Avenue. Later, at around 7:00 p.m., he visited his aunt, who lives on St. Clair Avenue near East 190th Street. Willis returned home around 7:45 p.m. At that time, Santiago and his significant other, known as Hazel Flores (Hazel),[1] were there with the children. Willis, Hazel, and Santiago drank beer and double shots of vodka while the children played upstairs. According to Willis, Santiago had marijuana, and he decided to go to the store to buy a cigarello, to use as a "shell" for smoking. Willis and Santiago walked to a nearby gas station and bought the cigarello. When they returned, they smoked the marijuana-filled cigarello, commonly referred to as a "blunt," and continued to drink.

{¶ 5} Willis further testified that Santiago asked him if he knew anyone who could sell them more marijuana. A short time later, Santiago saw someone "that he was locked up in jail with" and invited that individual and the people with him into the apartment. A short time later, Santiago and Willis made a second trip to the store to buy another cigarello.

---

[1]Hazel, a transgendered individual, is identified in the transcript as Felix Quinones.

When they returned, Hazel and one of the children informed them that the men had robbed Hazel.

{¶ 6} Hazel accused Willis of setting up the robbery, and Santiago began to threaten Willis. Santiago then called for someone to pick him up. When his ride arrived, Willis walked him and Hazel to the car. According to Willis, Santiago drew near as if to shake his hand, then stabbed him in the lower abdomen with a knife, a serrated four-inch blade. Willis ran away, and Santiago chased him, threatening to kill him. Willis was taken to the hospital by ambulance. He required surgery and remained hospitalized for eight days.

{¶ 7} Willis admitted on cross-examination that he is not listed as a tenant of the CMHA premises. He also admitted that he has a burglary conviction.

{¶ 8} Patterson testified that Santiago is her cousin. On August 28, 2009, she spoke to him on the phone, and he indicated that he was going to his sister's house. Santiago then asked if he and Hazel could instead come to her house, and she agreed. They arrived around 4:00 p.m., and the group drank. After a while, Patterson's best friend came over and invited her out. The group subsequently agreed that Santiago and Hazel would stay with the children, and Patterson would go out. Later, after receiving a phone call asking her to return home, Patterson observed that Willis had been stabbed.

{¶ 9} Sergeant Ortiz testified that he went to Patterson's apartment in response to a call that someone had been stabbed. At that time, Willis had been taken to MetroHealth

Medical Center. Patterson advised Sergeant Ortiz that "Arcadio" and "Hazel" had been invited to the unit, and one of them stabbed Willis after a dispute over money. There was no mention of a robbery prior to the stabbing however.

{¶ 10} Sergeant Ortiz further testified that Hazel was still at the unit, but she declined to speak with him. Santiago was not at the scene.

{¶ 11} Officer Allen testified that he arrived just as Willis was being transported to the hospital. Hazel was at the scene, but Santiago had left. Officer Allen attempted to locate Santiago, but he was unable to do so.

{¶ 12} Officer Kolb testified that approximately one week after this incident, he spoke with Willis and Patterson and obtained verbal statements from them. Patterson stated that Santiago had been at the unit, and Willis identified Santiago as his assailant.

{¶ 13} Santiago elected to present evidence and offered the testimony of Felix Quinones, a.k.a. Hazel. Hazel testified that Patterson called Santiago and invited them to her apartment. They arranged for a ride and arrived at around 5:00 p.m. The group sat around and drank beer. Around 8:00 p.m., another friend of Patterson's arrived and invited her to go out. Patterson asked Santiago to stay there and watch her children, and he agreed to do so. Before leaving, Patterson explained that Willis may come over and she asked them to let him into the house. Patterson then left.

{¶ 14} According to Hazel, Willis arrived about ten minutes later. Five minutes after that, five other men arrived and Willis let them into the apartment. Hazel stated that Willis knew these men, and he spoke with them while she and Santiago spoke privately. Willis then asked Santiago to go to the store with him to buy more beer. He agreed, but told Willis that the five other men could not remain at the apartment while they were gone. Willis agreed and the men left.

{¶ 15} Hazel testified that Willis watched as Santiago put money into her pocket. Willis and Santiago then left to go to the store. A few minutes later, the five men returned and demanded money. Two of the men grabbed Hazel and one of them pulled out a gun. The men took the money and pushed her to the ground. They left a short time later.

{¶ 16} Hazel further testified that the police arrived, and she reported the robbery but did not use her real name because she feared Willis. They left at around midnight.

{¶ 17} The jury subsequently convicted Santiago of all offenses. On September 8, 2010, the trial court merged the three offenses and sentenced him to six years of imprisonment, to be served consecutively to his three-year sentence imposed in an unrelated matter.

{¶ 18} Santiago now appeals, assigning five errors for our review.

ASSIGNMENT OF ERROR ONE

**"Appellant was denied a fair trial when the trial court denied his request for a continuance to obtain testimony that would have impeached the credibility of the alleged victim."**

{¶ 19} Within this assignment of error, Santiago complains that the trial court erred in refusing to continue the matter in order to allow him to obtain testimony from the laboratory analyst as to the results of a drug test that would have impeached Willis's testimony that he was smoking marijuana with defendant prior to the attack.

{¶ 20} The grant or denial of a continuance is entrusted to the broad, sound discretion of the trial court. *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710. In exercising that discretion, the trial court should consider the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors. Id. The court may deny a continuance that is requested as a trial tactic. Id. See, also, *State v. Powell* (1990), 49 Ohio St.3d 255, 259, 552 N.E.2d 191; *State v. Unger* (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078.

{¶ 21} In this case, the record indicates that on the second morning of trial, counsel for Santiago advised the court that he had spoken to Santiago's probation officer the previous evening and learned that Santiago had passed a drug test taken on September 22, 2009. According to counsel, these test results showed that Santiago had not used drugs in the 30 days before the test, therefore impeaching Willis's testimony that Santiago had smoked marijuana immediately before the attack. Counsel asked the court to allow admission of the negative

drug test, but to exclude evidence that Santiago is on probation. Counsel also asked for a continuance to identify the laboratory analyst who conducted the drug test.

{¶ 22} The trial court subsequently noted that in Santiago's January 14, 2010 competency and sanity evaluations, he stated that he had not smoked marijuana for approximately two months prior to the incident. The court additionally noted that the analyst would be required to testify about the test, and that the State would be permitted to conduct a voir dire of this witness prior to the court permitting any testimony. At this point, defense counsel informed the court that the toxicologist and the acting toxicologist were both on vacation and asked for a continuance. The trial court denied that request.

{¶ 23} We find no abuse of discretion. The length of the delay was uncertain. The reason for the delay, i.e., to corroborate that Santiago had not smoked marijuana, could have been pursued at least six months prior to trial, when his drug history was referenced in his competency and sanity evaluations. Because the matter was raised on the second day of testimony, it involved great inconvenience to the court. Accordingly, the trial court did not abuse its discretion in denying the mid-trial request for a continuance.

{¶ 24} This assignment of error is without merit.

ASSIGNMENT OF ERROR TWO

**"The trial court erred by denying Appellant's motion for a mistrial where a witness improperly testified before the jury that defendant had been in jail and the trial court did not give the jury a limiting instruction * * * that may have diminished the prejudicial effect of this improper testimony."**

{¶ 25} Santiago next complains that the trial court should have ordered a mistrial after Willis twice stated in his direct testimony that Santiago let the group of men into the house after he recognized one of them as "somebody that he was locked up in jail with."

{¶ 26} The grant or denial of an order of mistrial lies within the sound discretion of the trial court. *State v. Garner* (1995), 74 Ohio St.3d 49, 656 N.E.2d 623. An appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material prejudice. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. A mistrial should be declared only when the ends of justice so require and a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 580 N.E.2d 1. Where the request for a mistrial is based upon a brief, isolated incident that does not involve prosecutorial misconduct, the trial court is within its discretion in denying the motion for a mistrial. Id.

{¶ 27} Viewing this matter in its entirety, we find no abuse of discretion. First, Willis's remarks were not solicited by the prosecuting attorney and were brief and isolated. Moreover, with regard to the substance of the remarks, they do not establish that Santiago committed any offense. Although the court would have been well advised to provide a curative instruction to the jury, we note that the court did instruct the jury that Santiago was presumed innocent of the charges unless proven guilty beyond a reasonable doubt. We conclude that the remarks did not deprive defendant of a fair trial and were harmless beyond a reasonable doubt.

**{¶ 28}** This assignment of error is without merit.

ASSIGNMENT OF ERROR THREE

**"The trial court erred by giving a flight instruction to the jury over Appellant's objection."**

**{¶ 29}** Here Santiago asserts that the court's flight instruction was erroneous because it did not advise the jury that if they found that he left the scene for reasons other than a consciousness of guilt then it should not consider evidence of his departure for any purpose. He further complains that a flight instruction was not warranted in this matter because he did not flee, but rather left the scene after reporting the robbery to CMHA police.

**{¶ 30}** As an initial matter, we review a trial court's issuance of a jury instruction for an abuse of discretion. *State v. Williams*, Cuyahoga App. No. 90845, 2009-Ohio-2026. Further, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields* (1984), 13 Ohio App.3d 433, 436, 469 N.E.2d 939. Flight from justice may be indicative of a consciousness of guilt. *State v. Taylor*, 78 Ohio St.3d 15, 27, 1997-Ohio-243, 676 N.E.2d 82. However, "a mere departure from the scene of the crime is not to be confused with a deliberate flight from the area in which the suspect is normally to be found." *State v. Norwood* (Sept. 30, 1997), Lake App. Nos. 96-L-089 and 96-L-090.

**{¶ 31}** With regard to the form of the instruction, we note that in this matter, the court instructed the jury as follows:

"There may be evidence in this case to indicate that the defendant fled from the scene of the crime. Flight does not in and of itself raise the presumption of guilt but it may show consciousness of guilt or a guilty connection with a crime. If you find the defendant did flee from the scene of the crime, you may consider this circumstance in your consideration of the guilt or innocence of the defendant."

{¶ 32} As to the court's failure to include language in the instruction advising the jury not to consider evidence of Santiago's departure from the scene if they find that it was not motivated by consciousness of guilt, we note that in *State v. Stokes,* Mahoning App. No. 08-MA-39, 2009-Ohio-4820, the court rejected this same contention. In *Stokes*, which involved the same instruction given herein, the court held that the trial court did not abuse its discretion in failing to additionally charge the jury to consider other motives for departing the scene or to disregard evidence of the accused's departure, and noted that the instruction that the court gave is an accurate statement of the law, taken verbatim from the Ohio Supreme Court's decision in *State v. Eaton* (1969), 19 Ohio St.2d 145, 160, 249 N.E.2d 897, vacated on other grounds (1972), 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 750; holding reaffirmed in *State v. Williams*, 79 Ohio St.3d 1, 11, 1997-Ohio-407, 679 N.E.2d 646. See, also, *State v. Wright*, Cuyahoga App. No. 92344, 2009-Ohio-5229 (trial counsel not ineffective for failing to request this additional language in flight instruction). Cf. *State v. Lozada*, Cuyahoga App. No. 94902, 2011-Ohio-823 (no error where the court's oral charge to the jury failed to contain this additional language but the written charge did contain this language).

{¶ 33} In this matter, the court's instruction also tracks the language of *Eaton* and is an accurate statement of law. Moreover, the given instruction is identical to an instruction approved by this court in *State v. Hamilton*, Cuyahoga App. No. 86520, 2006-Ohio-1949. The court's instruction informed the jury that "*[i]f* you find the defendant did flee from the scene of the crime, you may consider this circumstance in your consideration of the guilt or innocence," so it did apprise the jury to consider whether there had been more than a mere departure from the scene. (Emphasis added.) The form of the instruction was not an abuse of discretion.

{¶ 34} As to whether the instruction was warranted herein, we note that in *State v. Villa*, Lorain App. No. 05CA008773, 2006-Ohio-4529, the court held that the trial court did not abuse its discretion in giving a flight instruction where the evidence established that defendant departed the scene, was sought for questioning about the crime, and could not be located.

{¶ 35} In this matter, there was evidence that while Hazel remained at the scene, Santiago left immediately and the officers could not locate him. We find no abuse of discretion viewing the record in its entirety.

ASSIGNMENT OF ERROR FOUR

**"Appellant's convictions are against the manifest weight of the evidence."**

{¶ 36} In determining whether a conviction is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 54, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 37} The appellate court may not merely substitute its view for that of the jury, and reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *Martin.*

{¶ 38} In this matter, after examining the entire record, weighing the evidence and all reasonable inferences, we are unable to conclude that the jury clearly lost its way and created such a manifest miscarriage of justice in convicting defendant of the offenses of attempted murder and felonious assault. The State's evidence demonstrated that upon returning from the store with Willis and learning that Hazel had been robbed of money by Willis's friends, Santiago became enraged and began to threaten Willis. As

Willis was walking him out, Santiago drew near as if to shake Willis's hand, then stabbed him in the lower abdomen and continued to chase and threaten him. Santiago's evidence indicated that Hazel called the police to report the robbery, and the defense suggested that other individuals had stabbed Willis after Santiago left. It is certain, however, that the police and EMS responded to the scene due to a stabbing, however, and not due to a robbery, and that Willis had already been stabbed by the time the police arrived. The convictions are not against the manifest weight of the evidence.

{¶ 39} The fourth assignment of error is without merit.

ASSIGNMENT OF ERROR FIVE

**"The trial court's imposition of consecutive sentences is contrary to law and an abuse of discretion."**

{¶ 40} Within this assignment of error, Santiago asserts that *Oregon v. Ice*, (2009), 555 U.S. 160, 129 S.Ct.711, 172 L.Ed.2d 517, retroactively reinstates the consecutive-sentencing statutes requiring factfinding that were excised in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, so the trial court was required to make findings of fact in order to sentence defendant to a term of imprisonment which was to be served consecutively to the sentence imposed in another matter. He further asserts that the sentence imposed is disproportionate to the offense and is inconsistent with the sentence imposed for similar crimes committed by similar offenders.

**{¶ 41}** In *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, the Ohio Supreme Court recently addressed this argument and held that *Ice* "does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *Foster*. Trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." Id. at paragraphs two and three of the syllabus. Therefore, post-*Foster*, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing maximum, consecutive or more than the minimum sentence." *State v. Kalish*, 120 Ohio St.3d 23, 25, 2008-Ohio-4912, 896 N.E.2d 124.

**{¶ 42}** As to Santiago's additional claims regarding proportionality and consistency, we note that he did not challenge the proportionality of his sentence or the consistency of it as compared to other similar offenders in the court below, therefore, he has waived this issue. *State v. Lycans*, Cuyahoga App. No. 93480, 2010-Ohio-2780.

**{¶ 43}** In this matter, the court complied with the applicable rules and statutes, so the sentence is not clearly and convincingly contrary to law, and the court did not abuse its discretion. At the sentencing hearing, the trial court noted that Santiago had three prior offenses, that rehabilitation efforts and measures to treat his mental

illness were unsuccessful, and that his behavior had repeatedly put others at risk.

This assignment of error is without merit.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
SEAN C. GALLAGHER, J., CONCUR