[Cite as *State v. A.M.*, 2018-Ohio-4209.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106400**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**A.M.**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-17-620452-A

**BEFORE:** E.A. Gallagher, A.J., Kilbane, J., and Laster Mays

**RELEASED AND JOURNALIZED:** October 18, 2018

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Debora Brewer
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, A.J.:

{¶1} Defendant-appellant A.M. appeals his convictions for rape, attempted rape and kidnapping in the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm, in part, and reverse, in part.

**Facts and Procedural History**

{¶2} On August 22, 2017 A.M. was indicted on seven counts of rape, five counts of kidnapping, one count of gross sexual imposition and one count of attempted rape. The indictment alleged offenses against three separate victims, M.M., D.S. and B.T. The three victims are sisters who share the same father, A.M., but do not share the same mothers.

{¶3} Counts 1 through 11 pertained to M.M. Counts 1, 2, 3, 4, 5 and 6 alleged crimes occurring between November 9, 2011 and November 9, 2012. Counts 7, 8 and 10 alleged crimes occurring between November 9, 2012 and November 9, 2013. Counts 9 and 11 alleged crimes occurring between February1, 2016 and April 1, 2016.

{¶4} In Count 12 appellant was charged with gross sexual imposition against B.T. occurring on or about June 21, 2016. Count 13 charged appellant with the rape of D.S. on April 23, 1997. Count 14 charged appellant with the kidnapping of D.S. on March 26, 1997.

{¶5} All counts contained a sexually violent predator specification and the counts of kidnapping also contained sexual motivation specifications. The case proceeded to a jury trial where the following facts were adduced.

{¶6} Evidence was presented that D.S. began living with her father, A.M., at a home on Euclid and Superior when she was between the ages of five and seven. D.S. was born on April 16, 1990. She testified that when she was seven years old she was awakened by A.M. and he forced her

to perform fellatio on him. D.S. did not report the incident to any member of her family out of fear of A.M.

{¶7} In 2011, D.S. lived with her father at his home on Sophia Avenue. M.M., D.S.'s sister and A.M.'s daughter from a different mother, began visiting A.M.'s home to spend time with her sisters. D.S. testified that M.M. was isolated from everyone. D.S. would sleep on the second floor of the home but M.M. was not allowed to sleep upstairs and would always sleep downstairs. D.S. also testified that A.M. once told her that he had slept with everybody in M.M.'s mother's family.

{¶8} In 2016, D.S. had a cookout at her home on East 133rd that was attended by A.M., M.M., and B.T. (another daughter of A.M.). D.S. and A.M. had an argument at the cookout. Later, D.S. noticed that M.M. was acting "strange." D.S. spoke with M.M. about their father and shared her account of being sexually assaulted by him. This triggered a disclosure by M.M. of her own instances of being sexually assaulted by A.M. D.S. shared that information with M.M.'s mother and eventually called the Cuyahoga County Sheriffs Department.

{¶9} D.S. and M.M.'s sister, B.T., was born on July 9, 2003. B.T. testified that while she was attending D.S's cookout, her father, A.M., came up behind her and touched her vagina, over her clothing, with his fingers. B.T. reported the incident to M.M. and M.M.'s mother.

{¶10} M.M. was born on November 9, 2002 and met her sister D.S. at her grandmother's funeral in 2011 when she was nine years old. M.M. testified that during the first night she spent at her father's home he attempted to awaken her while she was sleeping but she ignored him and, in the morning, discovered that her pants had been unzipped.

{¶11} M.M. spent Christmas break in 2011 at her father's home. One day during this time she came into the home from outside and A.M. called her into the living room and told her to pull her pants down. A.M. then bent her over the couch and forced his penis "in my butt." M.M. testified

that it was painful and that she screamed but A.M. told her to "shut up." After A.M. was finished, she went to the bathroom and wiped a white substance off of herself. M.M. testified that A.M. again raped her anally later that night.

{¶12} When M.M. was ten years old, another incident occurred at night when she was alone downstairs with A.M. while the other members of the family were upstairs. M.M. testified that A.M. inserted his penis in her mouth "for a long time" before ejaculating. M.M. further testified that A.M. then laid her on a pad on the floor with a pillow under her buttocks, forced her to perform fellatio until he ejaculated and then anally raped her.

{¶13} Finally, M.M. testified to an incident that occurred outdoors, at night, when she was either nine or ten years old. A.M. took her behind some trees on the property and performed cunnilingus on her.

{¶14} M.M. estimated that A.M. assaulted her more than 20 times in total. M.M. testified that she would sleep in the dining room on a pullout couch or in the living room and everyone else would sleep upstairs. Upon cross-examination, M.M. clarified that sometimes her sisters would sleep downstairs as well. A.M. did not allow her to sleep upstairs. M.M. testified that she did not tell anyone about the incidents because A.M. told her that if she did, he would kill her and anyone she told.

{¶15} At some point A.M. was out of M.M.'s life for a period of time but he returned in 2015 or 2016 when she was in seventh grade. M.M. went downtown with A.M, believing him to be reformed. After the shopping excursion, A.M. brought M.M. to his home. A.M. took M.M. into his room and said "you know what to do." A.M. pulled his pants down and told M.M. to pull her skirt down but she refused. M.M. reached for her phone and A.M. threatened her with a razor. A.M.

managed to remove M.M.'s tights from beneath her skirt but she continued to resist and the incident ended when A.M.'s roommate arrived at the home. A.M. then took M.M. to her home.

{¶16} M.M. next saw her father at a barbecue at D.S.'s home. M.M. avoided A.M. and later had a conversation with D.S. where she revealed to D.S. that A.M. had been touching her. This was the first time she had ever told anyone about the incidents. M.M.'s mother contacted the police the next day.

{¶17} During the state's case, the testimony of a social worker with the Department of Children and Family Services was introduced. Amongst other things, the social worker testified that "[M.M.] reported her dad was in prison for most of her life." The defense immediately moved for a mistrial alleging this testimony prejudiced the jury. The judge denied the motion and gave a curative instruction to the jury.

{¶18} At the close of the state's case the state moved to nolle one count of rape (Count 5) and two counts of kidnapping (Counts 6 and 10). Each of these counts pertained to offenses where M.M. was named as the victim. The court also granted the state's motion to amend the rape charge in Count 2 for the purpose of conforming it to M.M.'s trial testimony. Count 2 was amended, over objection, from a vaginal rape to a cunnilingus rape and the date range of that count was expanded by one year.

{¶19} The jury returned a verdict of guilty on four counts of rape, two counts of kidnapping with sexual motivation specifications and one count of attempted rape. All of the counts for which the jury returned a guilty verdict pertained to M.M. The trial court found appellant guilty of each of the sexually violent predator specifications attached to said counts. The jury acquitted appellant of one count of rape pertaining to M.M. as well as all of the counts of rape, gross sexual imposition and kidnapping pertaining to B.T. and D.S.

**{¶20}** The appellant was sentenced to life without parole for the rape charges in Counts 1, 2 and 4. The court imposed prison terms of life with parole eligibility after ten years on the kidnapping and attempted rape charges in Counts 3, 9 and 11. The court imposed a prison term of life with parole eligibility after 25 years on the charge of rape in Count 7. The court ordered the life without parole sentences in Counts 1 and 2 to be served consecutively. All other counts were ordered to be served concurrently to Count 2.

**Law and Analysis**

**I. Denial of Appellant's Motion for a Mistrial**

**{¶21}** In his first assignment of error, appellant argues that the trial court erred in denying his motion for a mistrial after the social worker testified that M.M. had reported that A.M. had been in prison for most of M.M.'s life.

**{¶22}** The decision whether to grant or deny a motion for mistrial lies within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. *State v. Willis*, 8th Dist. Cuyahoga No. 99735, 2014-Ohio-114, ¶ 36, citing *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). An "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶23}** "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected * * * ." *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2d Dist.1988), paragraph two of the syllabus. The granting of a mistrial is necessary only when "a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

**{¶24}** This court has held that where a witness makes a reference to a defendant's criminal history and there was no showing that the defendant suffered material prejudice, a mistrial is not warranted. *See, e.g., State v. Jones*, 8th Dist. Cuyahoga No. 102318, 2015-Ohio-4694, ¶ 97 (finding no material prejudice to the defendant despite a witness's unsolicited, improper reference to the fact that the defendant had recently been released from jail); *State v. Payne*, 8th Dist. Cuyahoga No. 105956, 2018-Ohio-1399 (finding no material prejudice to the defendant where an improperly admitted reference to the defendant's "criminal history" was brief and did not reference any specific crimes); *State v. Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, ¶ 25-27 (finding no material prejudice to the defendant where a witness made an isolated reference to a statement made by the defendant implying that he had been in jail).

**{¶25}** Where the reference to a defendant's prior arrests is "fleeting" and is followed by a curative instruction, the trial court does not abuse its discretion in failing to order a mistrial. *Garner*, 74 Ohio St.3d at 59, 656 N.E.2d 623; *see also State v. McCree*, 8th Dist. Cuyahoga No. 87951, 2007-Ohio-268, ¶ 40 (finding no prejudice to the defendant based on a reference to her "[coming] home from the penitentiary" where the trial court struck the statement and advised the jury to disregard it); *State v. Batiste*, 8th Dist. Cuyahoga No. 87194, 2006-Ohio-4501, ¶ 15-16 (finding no material prejudice where a curative statement was issued after a witness indicated that the defendant was feared because he had just gotten out of jail); *State v. Mobley*, 2d Dist. Montgomery No. 18878, 2002-Ohio-1792 (finding a detective's statement which indicated that the defendant had been previously incarcerated was harmless error and cured by trial court's instructions).

**{¶26}** A jury is presumed to follow the instructions, including curative instructions, given to it by a trial judge. *Garner* at 59. *State v. Rowe*, 92 Ohio App.3d 652, 672-673, 637 N.E.2d 29 (10th

Dist.1993) (a jury is presumed to disregard testimony that has been stricken from the record by a trial court's instructions).

**{¶27}** In this instance, while the social worker's statement was unquestionably improper, we are not persuaded that A.M. suffered material prejudice because the record reflects a jury that carefully discerned the credibility of the various witness and held the state to its burden of proof as opposed to a jury that was tainted by a belief that A.M. was a criminal. This was demonstrated by the not guilty verdicts on the counts pertaining to two of the three testifying victims. Furthermore, the social worker's statement was not prejudicially connected to the counts in the present case. The statement referencing prison was vague and in no way suggested that A.M. had a history of committing sexually oriented offenses. Also, the statement was isolated and not confirmed by any other testimony, thereby leaving the impression that the statement was merely hearsay by a social worker who had no direct knowledge of A.M.'s criminal record.

**{¶28}** Finally, the trial court issued an appropriate curative statement to the jury regarding the improper statement noting that it was not relevant to the case at hand, was not a fact in evidence and that it amounted to unreliable hearsay that could merely represent a rumor. The court inquired if any juror would be unable to disregard the statement and no juror indicated such an inability.

**{¶29}** On these facts we cannot say that the trial court abused its discretion in denying appellant's motion for a mistrial.

**{¶30}** Appellant's first assignment of error is overruled.

**II. Denial of Appellant's Motion to Sever the Charges**

**{¶31}** In his second assignment of error, appellant argues that the trial court erred in denying his motion to sever the charges relating to crimes alleged against M.M. from those where B.T. and D.S. were named victims.

**{¶32}** Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Ohio law "'favors joining multiple offenses in a single trial'" if the requirements for joinder under Crim.R. 8(A) are met. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 59, quoting *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990); *State v. Williams*, 73 Ohio St.3d 153, 157, 652 N.E.2d 721 (1995); *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 38. "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992); *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 10.

**{¶33}** If, however, it appears that a defendant is prejudiced by a joinder of offenses, the trial court may grant a severance under Crim.R. 14. Crim.R. 14 provides, in relevant part: "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14. "Severance may be warranted if the trial court finds a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence." *State v. Jackson*, 8th Dist. Cuyahoga No. 102394, 2015-Ohio-4274, ¶ 12, citing *United States v. Zafiro*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). A defendant seeking severance must "'furnish[] the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial.'" *State v. Hand*, 107 Ohio St.3d 378, 401, 2006-Ohio-18, 840 N.E.2d 151, ¶ 166, quoting *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). The defendant "'bears the burden

of proving prejudice and of proving that the trial court abused its discretion in denying severance.'"

*Dean* at ¶ 60, quoting *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29.

**{¶34}** If a defendant makes a case for prejudicial joinder, "[t]he state may rebut a defendant's claim * * * in two ways." *Dean* at ¶ 61; *Jackson* at ¶ 13. First, "if in separate trials the state could introduce evidence of the joined offenses as 'other acts' under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder" — the "other acts" test. *Dean* at ¶ 61, citing *Lott* at 163. Evid.R. 404(B) recognizes that evidence of other crimes may be admissible for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. If one offense could be introduced under Evid.R. 404(B) at the trial of the other offense, had the offenses been tried separately, "any 'prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *Schaim* at 59, quoting *Drew v. United States*, 331 F.2d 85, 90, 118 U.S. App. D.C. 11 (D.C.Cir.1964). Second, "the state can refute prejudice by showing that 'evidence of each crime joined at trial is simple and direct.'" *Dean* at ¶ 61, quoting *Lott* at 163. Where evidence of the joined offenses is "uncomplicated," such that the jury is "capable of segregating the proof" required to prove each offense, a defendant is not prejudiced by joinder. *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 33 ("A trier of fact is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated."); *State v. Ferren*, 8th Dist. Cuyahoga No. 95094, 2011-Ohio-3382, ¶ 40 ("A trial court does not abuse its discretion in denying a motion for severance of trials when the state presents evidence that is direct, uncomplicated, and the jury demonstrates its ability to segregate the proof on each charge.") "'The object of the simple and distinct test is to prevent the jury from improperly considering evidence of various crimes as corroborative of each other. The very essence of the rule is

that the evidence be such that the jury is unlikely to be confused by it or misuse it.'" *Echols* at ¶ 16, quoting *State v. Echols*, 128 Ohio App.3d 677, 694, 716 N.E.2d 728 (1st Dist. 1998).

{¶35} Evidence of multiple offenses is "simple and direct" where, for example, the offenses involved different victims, different incidents or different factual scenarios and different witnesses. *See, e.g.*, *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 88 (8th Dist.); *State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and 14AP-908, 2015-Ohio-3641, ¶ 23; *State v. Morales*, 10th Dist. Franklin Nos. 03AP-318 and 03AP-319, 2004-Ohio-3391, ¶ 21; *see also Echols*, 2015-Ohio-5138, at ¶ 16, quoting *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33 ("'Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.'").

{¶36} If either the "other acts" test or the "simple and direct" test is met, a defendant cannot establish prejudice from the joinder. *Nitsche* at ¶ 89. Thus, if the state can meet the "simple and direct" test, it need not meet the "stricter" "other acts" test. *Echols* at ¶ 11 (a defendant is "not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B)").

{¶37} In this instance, the three named victims were all biological daughters of A.M. The alleged abuse was facilitated by his access to the children due to the nature of that relationship. Furthermore, the cases were interrelated due to the manner in which the victims disclosed A.M.'s alleged abuse to each other. The state argued, and the trial court gave credence to, the fact that the testimony of each of the victims would be relevant for the purpose of deciding the sexually violent predator specifications and separate trials would require the alleged victims to repeatedly testify. Under Crim.R. 8(A), the various counts were eligible to be tried together because they were "of the

same or similar character" and their joint trial conserved judicial resources and prevented repetitive testimony by the witnesses. Furthermore, we find no error in the court's decision to deny severance in this instance because the evidence of the multiple offenses in this case was simple and direct. The offenses involved different victims, different incidents and clearly differentiated time periods. The evidence was presented in an orderly fashion and the jury was capable of segregating the proof required to prove each offence. *See, e.g.*, *Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, at ¶ 33 ("[A] trier of fact is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated."); *Ferren*, 2011-Ohio-3382, at ¶ 40 ("A trial court does not abuse its discretion in denying a motion for severance of trials when the state presents evidence that is direct, uncomplicated, and the jury demonstrates its ability to segregate the proof on each charge."). This is borne by the verdicts in this case.

**{¶38}** Appellant's second assignment of error is overruled.

### III. Sufficiency of the Evidence

**{¶39}** In his third assignment of error, appellant argues that the state failed to present sufficient evidence to support his convictions.

**{¶40}** A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether,

if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25; *Jenks* at paragraph two of the syllabus.

**{¶41}** Appellant initially argues that none of his convictions were supported by sufficient evidence. However, the sole argument he presents that encapsulates all of the charges is that M.M.'s testimony was not credible. We do not consider the credibility of the witnesses when reviewing a sufficiency-of-the-evidence claim. *In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 51., citing *State v. Williams*, 8th Dist. Cuyahoga No. 98528, 2013-Ohio-1181, ¶ 27; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. "We assume the state's witnesses testified truthfully and determine whether that testimony (and any other evidence presented) satisfies each element of the offense." *In re C.A.* at ¶ 51. The testimony of one witness, if believed by the factfinder, is enough to support a conviction. *See, e.g.*, *State v. Adams*, 5th Dist. Licking No. 14-CA-25, 2014-Ohio-4233, ¶ 14.

**{¶42}** Appellant's remaining arguments under this assignment of error are limited to challenging his rape conviction under Count 2 and the trial court's guilty verdict on the sexually violent predator specifications. Appellant has not offered any cognizable arguments addressing any of the other counts for which he was convicted.

**a. Rape**

**{¶43}** Appellant was convicted of four counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides in relevant part:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶44}** Appellant's sole argument challenging his rape convictions is that the trial court erred by permitting the state to amend the details of the rape charged in Count 2 to conform to the testimony at trial. This argument is not appropriate under a sufficiency challenge and we address it in appellant's fifth assignment of error. Furthermore, any argument that the state failed to meet its burden on the rape in Count 2, as amended, is without merit. M.M. testified that when she was either nine or ten years old A.M., took her behind some trees behind his home and forcibly performed cunnilingus on her. M.M.'s testimony was sufficient to support A.M.'s conviction of rape in Count 2.

### b. Sexually Violent Predator Specifications

**{¶45}** Lastly, appellant argues that the trial court's guilty findings on his sexual violent offender specifications lacked sufficient evidence. R.C. 2971.01(H)(1) defines a "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(2)(a)-(f) lists the factors that may be considered by the factfinder as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses. It provides:

(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

(f) Any other relevant evidence.

R.C. 2971.01(H)(2).

**{¶46}** Appellant first argues that the underlying convictions in the present case cannot be used to support a sexually violent predator specification. We have previously rejected this argument and held that the sexually violent predator statute does not require a defendant to have a prior conviction for a sexually oriented offense to be found guilty of a sexually violent predator specification. *State v. Mitchell*, 8th Dist. Cuyahoga No. 94287, 2010-Ohio-5775, ¶ 26. Under R.C. 2971.01(H)(1), as amended in 2005, a sexually violent offense in the current indictment can be the basis for a sexually violent predator specification. *State v. Green*, 8th Dist. Cuyahoga No. 96966, 2012-Ohio-1941, ¶ 23-25; *State v. Boynton*, 8th Dist. Cuyahoga No. 93784, 2010 Ohio 4670, ¶ 5.

**{¶47}** Appellant also contends that there was not sufficient evidence for the court to find A.M. was likely to engage in the future in one or more sexually violent offenses. We disagree. In considering a sexually violent predator specification, R.C. 2971.01(H)(2)(f) allows the trial court to consider "any other relevant evidence." In this instance, M.M described repetitive violent sexual behavior by A.M., estimating that he had raped her more than 20 times. The testimony established that A.M. had a pattern of taking advantage of M.M.'s vulnerable age and her relationship as his daughter in order to abuse her. M.M. further testified that "he told me if I told anybody, he would

kill me and whoever else I told." Further, A.M. used a razor blade during the attempted rape which occurred years after the initial period of abuse. We find the conduct in this case to be sufficient to support the trial court's finding that A.M. is likely to engage in the future in one or more sexually violent offenses. *See, e.g., State v. Campbell*, 8th Dist. Cuyahoga No. 105622, 2018-Ohio-1639, ¶ 25-26 (finding sufficient evidence to support sexually violent predator specifications where the victim was kidnapped, raped, and threatened to be murdered if she did not comply with the defendants' demands).

**{¶48}** Appellant's third assignment of error is overruled.

### IV. Manifest Weight

**{¶49}** In his fourth assignment of error, appellant argues that his convictions are against the manifest weight of the evidence.

**{¶50}** A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence but nevertheless conclude that the judgment is against the weight of the evidence.

**{¶51}** In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence

weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

**{¶52}** Appellant argues that his convictions were against the manifest weight of the evidence because the convictions hinged on the credibility of M.M.'s account of the incidents. Appellant argues that M.M. lacked credibility because she did not come forward with her accusations against appellant on her own accord and was reluctant to repeat her allegations to her mother and the social worker. Appellant further argues that there is no physical or independent evidence to corroborate M.M.'s allegations. M.M.'s reluctance to come forward with the allegations against A.M. was explained at trial when she testified that A.M. threatened to kill her and anyone to whom she disclosed the abuse. The jury was in the best position to judge the credibility of M.M.'s testimony in this instance. We cannot say that its judgment is against the manifest weight of the evidence.

**{¶53}** Appellant's fourth assignment of error is overruled.

**V. Amendment of the Indictment**

**{¶54}** In his fifth assignment of error, appellant argues the trial court erred when it allowed the state to amend the indictment on the charge of rape in Count 2. To conform to the testimony of the victim at trial, the court permitted the state to expand the time frame alleged in the indictment to include an additional one year period and to change the form of rape alleged from vaginal rape to cunnilingus.

**{¶55}** Crim.R. 7(D) provides that a trial court "may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to . . . any variance with the evidence, provided no change is made in the name or identity of the crime charged." Under the rule, the state is permitted to amend an indictment to conform to the evidence, provided that there is no change in the name or identity of the offense charged. *State v. Buchanan*, 2017-Ohio-1361, 88

N.E.3d 686, ¶ 21 (8th Dist.). "This court reviews the trial court's decision to permit the amendment of an indictment for an abuse of discretion, and, to show a reversible error has occurred." *Id*. Appellant must show not only that the trial court abused its discretion, but that the amendment prejudiced his defense. *Id*., citing *State v. Beach*, 148 Ohio App.3d 181, 2002-Ohio-2759, 772 N.E.2d 677, ¶ 23 (1st Dist.).

**{¶56}** A change in the name or identity of a crime charged occurs when the offense alleged in the indictment and the offense alleged in the amended indictment contain different elements that require independent proof. *State v. Mullins*, 124 Ohio App.3d 112, 114, 705 N.E.2d 709 (12th Dist.1997).

**{¶57}** In regards to the amendment of the time frame of the rape alleged in Count 2, we note that appellant failed to object to this amendment. Therefore, we review only for plain error.

**{¶58}** "The date and time of a rape is not an essential element of the offense." *Buchanan* at ¶ 22, citing *State v. Collinsworth*, 12th Dist. Brown No. CA2003-10-012, 2004-Ohio-5902. "'It is well settled that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity.'" *State v. Henderson*, 8th Dist. Cuyahoga No. 87236, 2006-Ohio-5567, ¶ 14, quoting *State v. Koelling*, 10th Dist. Franklin No. 94APA06-866 and 94APA06-868, 1995 Ohio App. LEXIS 1056 (March 21, 1995). "[A]lthough the State is required to supply specific dates and times regarding an offense where it possesses such information, the failure to provide specific dates does not prejudice or violate a defendant's constitutional rights provided that failure to prove times and dates does not present a material detriment to the preparation of the defense." *Id*. Appellant has failed to establish plain error in the amendment of the time frame in this instance.

**{¶59}** Appellant did object to the amendment of the rape from vaginal rape to cunnilingus. "'Whether an amendment changes the name or identity of the offense charged is a matter of law that we review de novo.'" *State v. Norman*, 8th Dist. Cuyahoga No. 104244, 2017-Ohio-92, ¶ 92, quoting *State v. Pheanis*, 2d Dist. Montgomery No. 26560, 2015-Ohio-5015, ¶ 23. "'If the amendment does not change the name or identity of the crime charged, then we apply an abuse of discretion standard.'" *Id.*, quoting *State v. Frazier*, 2d Dist. Clark No. 2008 CA 118, 2010-Ohio-1507, ¶ 23.

**{¶60}** This court has previously rejected the argument that an amendment pertaining to the form of rape involved constitutes a change to the nature or identity of the charged offenses. *Norman* at ¶ 95 (finding no change to the nature of identity of a charged rape offense where the trial court permitted an amendment from an allegation of vaginal penetration to anal penetration). R.C. 2907.02(A)(1)(b) defines rape in terms of "sexual conduct" and does not differentiate between any of the forms that satisfy the definition of that term under R.C. 2907.01(A). *Id.* The amendment did not change the degree of offense, the penalty, or significantly alter appellant's defense. Therefore, the trial court did not err in granting the state's motion to amend the indictment to reflect the evidence adduced at trial.

**{¶61}** Appellant's fifth assignment of error is overruled.

**VI. Allied Offenses**

**{¶62}** In his sixth assignment of error, appellant argues the trial court erred when it failed to merge Counts 1 (rape) and 3 (kidnapping) as well as Counts 9 (attempted rape) and 11 (kidnapping) as allied offenses of similar import. At sentencing, the trial court noted, and appellant's counsel affirmed, that the question of merger had been raised and that appellant's counsel had no argument to present that any of the counts for which he had been found guilty should merge as allied offenses.

**{¶63}** This court has previously held that in such situations an appellant is limited to an ineffective assistance of counsel argument and must demonstrate plain error in the failure to merge the purported allied offenses. *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 23-30 (8th Dist.).

**{¶64}** In order to establish a claim of ineffective assistance of appellate counsel, appellant must establish that the performance of his counsel was deficient and the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶65}** In *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, the Ohio Supreme Court held that

> [a]n accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice.

*Id*. at ¶ 3. The court further explained that

> an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; and, absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*Id.*

**{¶66}** R.C. 2941.25(A) allows only a single conviction for conduct that constitutes "allied offenses of similar import." Pursuant to R.C. 2941.25(B), a defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13, citing *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982).

**{¶67}** In *Ruff* the Ohio Supreme Court recently clarified the test a trial court and a reviewing court must employ in determining whether offenses are allied offenses that merge into a single conviction, stating:

> When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).
>
> A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses (1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm; (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.
>
> At its heart, the allied offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Id*. at ¶ 24-26.

**{¶68}** In determining if two or more offenses were committed with a separate animus this court in *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, stated:

> [T]he issue of whether two offenses are allied depends not only on whether the two crimes were committed in the same act, but also with a single state of mind. The Ohio Supreme Court has defined the term "animus" to mean "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979).[1] Because animus is often difficult to prove directly, it may be inferred

---

[1] Although the "two-step" allied offense analysis prescribed by the Supreme Court of Ohio in *Logan* has been

from the surrounding circumstances. When "an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, a priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." *Id*.

Thus, when determining whether two offenses were committed with a separate animus, the court must consider (1) whether the first offense was merely incidental to the second offense or whether the defendant's conduct in the first offense demonstrated a significance independent of the second, and (2) whether the defendant's conduct in the first offense subjected the victim to a substantial increase in the risk of harm apart from that involved in the second offense. *State v. Shields*, 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 17.

*Id*. at ¶ 34-35.

**{¶69}** With respect to the offenses of rape and kidnapping, the Supreme Court of Ohio has acknowledged that "implicit within every forcible rape * * * is a kidnapping" because the victim's liberty is restrained during the act of forcible rape. *State v. Asadi-Ousley*, 2017-Ohio-7252, 102 N.E.3d 52, ¶ 38 (8th Dist.), citing *Logan* at 130. In *Logan*, the court provided the following guidelines for determining whether kidnapping and another offense are allied offenses that should merge prior to sentencing, stating:

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Logan* at syllabus.

---

overruled, the court's discussion of animus remains relevant under the current tripart test prescribed in *Ruff*. *See, e.g.*, *State v. Lundy*, 8th Dist. Cuyahoga No. 105117, 2017-Ohio-9155, ¶ 26 ("Although *Logan* predates *Ruff*, Ohio courts continue to apply the guidelines set forth in *Logan* to determine whether * * * offenses were committed with a separate animus, in accordance with the third prong of the *Ruff* test.").

{¶70} Applying these guidelines, the Ohio Supreme Court held in *Logan*, that the offender's conduct in forcing the victim into an alley before raping her at knife point was committed without a separate animus. The court found that the movement was slight, the detention brief and the victim was released immediately after the commission of the underlying crime, compelling the court's conclusion that the kidnapping was incidental to the rape. *Id*. at 135.

{¶71} We find that A.M.'s trial court counsel was deficient in this instance for failing to seek the merger of the above counts and that such deficiency prejudiced A.M. because the record establishes that the offenses are, in fact, allied offenses.

{¶72} Regarding the rape in Count 1 and the kidnapping in Count 3, the state argues that this case is akin to *State v. Rodrigues*, 8th Dist. Cuyahoga No. 80610, 2003-Ohio-1334. In *Rodrigues*, the defendant transported his victim from her bedroom to his apartment for the singular purpose of raping her. However, the court found that the movement of the victim in that case was accomplished with a separate animus: "to avoid possible detection during the commission of the rape." *Id*. at ¶ 29. The state argues that A.M. secluded M.M. from other persons in the home for the purpose of avoiding detection while he assaulted her. However, this is not the manner in which the state presented the kidnapping charge to the jury at trial. Instead the state explained that the kidnapping charge in Count 3 "corresponds to that first rape where she was bent over the couch." We find no separate animus for the kidnapping in Count 3 as it was presented to the jury in this case. Additionally, the kidnapping did not result in separate, identifiable harm and it was not committed separately from the rape in Count 1. Therefore, those counts constituted allied offenses.

{¶73} We next consider the potential merger of the attempted rape in Count 9 and the kidnapping charge in Count 11. The state argues that the kidnapping associated with the attempted rape had a separate animus but fails to offer any explanation of what that animus was. The record

reflects that the restraint of M.M. in A.M.'s room was merely incidental to the attempted rape. The mere fact that A.M. possessed a weapon during the commission of the offense did not, by itself, create a separate animus. *See, e.g., State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979). The attempted rape and kidnapping charges in Counts 9 and 11 should have merged as allied offenses.

{¶74} A.M.'s sixth assignment of error is sustained.

{¶75} The judgment of the trial court is affirmed, in part, and reversed, in part.

{¶76} Appellant's sentences in Counts 1, 3, 9 and 11 are vacated. Case remanded to the trial court for the state to be provided the opportunity to elect which counts it wishes for appellant to be resentenced under following the merger of allied offenses.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS (WITH SEPARATE OPINION)

MARY EILEEN KILBANE, J., DISSENTING:

{¶77} I respectfully dissent. I would have granted A.M.'s motion for a mistrial. In light of the lack of any corroborating evidence, such as witness testimony, DNA evidence, and other physical

evidence against A.M., and the not guilty verdicts on D.S.'s sisters, I would find that the curative instruction was not adequate to cure the material prejudice of the social worker's statement that, "[M.M] reported her dad was in prison for most of her life[.]"

**{¶78}** The majority acknowledges that the social worker's statement was "unquestionably improper," but nevertheless finds that A.M. did not sustain material prejudice. The majority relies on various cases in support of its position. These cases, however, are distinguishable from the instant case.

**{¶79}** These cases do not involve a statement of this magnitude in a record that contains less than overwhelming evidence against the accused. For example, in *Jones*, 8th Dist. Cuyahoga No. 102318, 2015-Ohio-4694, a witness testified that defendant was under house arrest at the time of the shooting, had recently been released from prison, and had engaged in a fraudulent check scheme. *Id.* at ¶ 96. Defense counsel argued that these statements were inflammatory and unquestionably prejudicial. *Id.* This court found that while the unsolicited responses concerning defendant's criminal history were improper, these responses did not affect the outcome of trial because of the overwhelming evidence supporting defendant's convictions. *Id.* at ¶ 97. Specifically, the victim identified defendant as his shooter before he died and surveillance video depicts the defendant leaving the victim's apartment on the night of the shooting.

**{¶80}** In *Payne*, 8th Dist. Cuyahoga No. 105965, 2018-Ohio-1399, ¶ 12, the detective testified that he was able to identify the defendant by running him on the law enforcement data terminal and getting all of the defendant's "information, his last known address, his past criminal histories." This court found that a mistrial was not warranted based on these remarks because there was ample evidence at trial to convict the defendant. *Id.* at ¶20-21. At trial, the victim testified that

he knew the defendant "from the neighborhood, had seen him eight to ten times before, and had interacted with him a couple of times." *Id.* at ¶ 4.

{¶81} In *Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, at ¶ 25, the witness stated twice in his direct testimony that the defendant let a group of men into his house after he recognized one of them as "'somebody that he was locked up in jail with.'" When viewing the matter in its entirety, this court found that the trial court did not abuse its discretion when it denied defendant's motion for mistrial because the remarks were brief and isolated. *Id.* at ¶ 27. The overwhelming evidence at trial supported defendant's convictions — the victim identified defendant as the person who stabbed him. *Id.* at ¶ 6.

{¶82} Here, the evidence against A.M. hinged on the testimony of his daughters, with no witnesses, DNA evidence, or other physical evidence. Because of this lack of overwhelming evidence, I would find the social worker's statement highly prejudicial. "The law recognizes that there are times when statements are so prejudicial to an accused that even a limiting or curative instruction is not effective to alleviate the material prejudice caused by the statement." *State v. Beckwith*, 2012-Ohio-3076, 973 N.E.2d 849, ¶ 41 (8th Dist.2012), citing *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ("'there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored * * *'").

{¶83} While the declaration of a mistrial is an extreme remedy, a review of the evidence presented in this case leads to the conclusion that A.M.'s right to a fair trial was so jeopardized by the social worker's statement that a new trial is warranted.

{¶84} Based on the foregoing, I would find that the motion for a mistrial should have been granted.